1997-NMCA-113

949 P.2d 672

**STATE of New Mexico,
Plaintiff–Appellee,**

v̇.

**Charles CLEVE, Defendant–Appellant.**

**No. 17929.**

Court of Appeals of New Mexico.

Sept. 24, 1997.

Certiorari Granted Nov. 14, 1997.

Tom Udall, Attorney General, Ralph E. Trujillo, Assistant Attorney General, Santa Fe, for Appellee.

Phyllis H. Subin, Public Defender, Christopher Bulman, Assistant Public Defender, Santa Fe, for Appellant.

*OPINION*

ALARID, Judge.

1. This case addresses the question whether game animals are protected from cruel conduct and suffering under the statute prohibiting cruelty to animals. Following a jury trial, Charles Cleve (Defendant) was convicted of two counts of cruelty to animals, two counts of unlawful hunting, and negligent use of a firearm. Defendant challenges his convictions for cruelty to animals for using a wire snare to kill two deer. On appeal, Defendant raises two issues: (1) whether the State Game Commission is exclusively authorized to regulate the manner and devices used to kill game animals, thus preempting application of the cruelty to animals statute; and (2) whether deer fall within the cruelty to animals statute which was intended to protect domesticated animals and livestock. We affirm.

## BACKGROUND

2. Defendant owns a one-hundred acre ranch near Elk, New Mexico. For over twenty years, Defendant has had problems with an overpopulation of deer on his land which interfere with his crops and cattle. Defendant sought help from the Game and Fish Department. The Department attempted to help Defendant, but ceased further efforts in September 1995. In December 1995, Defendant killed at least fifteen deer, either by shooting or by snaring the animals. Defendant was convicted of two counts of cruelty to animals for using a wire snare to capture deer. One animal, a fawn, was caught in the snare and died of strangulation. Another animal, a buck, caught its antlers in the wire snare. The buck died from one of three possible causes of death: stress-related fatigue from fighting the snare, starvation, or dehydration.

## DISCUSSION

### I. Preemption

3. On appeal, Defendant argues that the State Game and Fish Commission has exclusive authority to regulate the manner in which game animals are killed, NMSA 1978, § 17–1–1 (1953), thus preempting the cruelty to animals statute. Defendant contends that the legislature intended the game and fish laws and regulations to occupy the entire field surrounding the killing of game animals, and did not intend the general cruelty to animals statute to apply to the same conduct.

4. The question presented is whether the legislature, by enacting the game and fish laws, intended to cover the whole field and subject matter relating to game animals including providing the exclusive penalties for killing of game animals. Defendant contends that the rule of construction regarding general and specific statutes will control the outcome of this appeal.

5. Statutory construction is a question of law reviewed de novo on appeal. *State v. Arellano*, 1997 NMCA 074, ¶ 3, 123 N.M. 589, 591, 943 P.2d 1042, 1044 (Ct.App.), *cert.* granted, 123 N.M. 446, 942 P.2d 189 (1997). The fundamental principle of statutory interpretation is that the court must determine and give effect to legislative intent. *Id.*, 123 N.M. at 591, 943 P.2d at 1044 (rule regarding general/specific statutes is not rigidly applied, but is used as a tool to allow the court to reach a reasonable interpretation of the legislature's intent). "Under the general/specific rule, when one statute deals with a subject in general and comprehensive terms and another deals with part of the same subject in a more minute and definite way, the latter controls if the two statutes cannot be harmonized." *Id.*, 123 N.M. at 591, 943 P.2d at 1044. Furthermore, if both a general and a specific statute address the same criminal conduct, the " 'special statute should control to the extent of compelling the state to prosecute under it.' " *State v. Yarborough*, 1996 NMSC 068, ¶ 26, 122 N.M. 596, 605, 930 P.2d 131, 140 (quoting *State v. Blevins*, 40 N.M. 367, 369, 60 P.2d 208, 210 (1936)).

6. Defendant argues that the cruelty to animals statute is the general statute because it applies to "any animal." The unlawful hunting statute, Defendant asserts, is the specific statute because it only applies to game animals. Meanwhile, the State contends that the general/specific rule is inapplicable in this case because the two statutes do not include the same subject matter. *See State v. Ibn Omar–Muhammad*, 102 N.M. 274, 277–78, 694 P.2d 922, 925–26 (1985) *Arellano*, 123 N.M. at 592, 943 P.2d at 1045.

7. Defendant's preemption argument fails because the statutes are complementary and exist for different purposes. The Fish and Game Act, Section 17–1–1 was promulgated

> to provide an adequate and flexible system for the protection of the game and fish of New Mexico and for their use and development for public recreation and food supply, and to provide for their propagation, planting, protection, regulation and conservation to the extent necessary to provide and maintain an adequate supply of game and fish within the state of New Mexico.

NMSA 1978, Section 17–2–7 (1979) states that it is unlawful to hunt or kill game animals except as permitted by regulation. The Department deer license regulations, New Mexico Department of Game and Fish, 19 NMAC 31.3.10.1 (Sept. 15, 1994), govern validation of deer hunting licenses. They also

regulate the sporting arms type that may be used. 19 NMAC 31.3.10.1.2. Additionally, the regulations control the location in which deer may be hunted. 19 NMAC 31.3.10.3.1. These regulations are consistent with the purpose of the Act, which is to insure adequate supplies of game and fish for their various uses.

8. The Game and Fish Regulations do not determine methods and manners of hunting game animals with respect to cruelty. The cruelty to animals statute, NMSA 1978, § 30–18–1 (1963), however, was intended to control human conduct with respect to how animals are treated. It is possible to illegally hunt game animals, but not to have been cruel in killing them. For example, one can hunt a deer out of season using approved hunting methods and be convicted of unlawful hunting. Conversely, one could be convicted of cruelty to animals, but not of unlawful hunting of game animals. For example, a hunter could lawfully shoot a deer with a valid license using an approved gun and only injure the deer, then proceed to torture the deer until it died. *See Boushehry v. State*, 648 N.E.2d 1174 (Ind.Ct.App.1995) (hunter convicted both of unlawful hunting and cruelty to animals for illegally hunting geese and slitting the throat of a goose after injuring it with gunshot). Therefore, both the cruelty statute and the game and fish laws and regulations are necessary to fully protect wild animals, and these two statutes can co-exist and have two different objectives. Therefore, Defendant's preemption argument fails, and he was properly convicted under the cruelty to animals statute.

## II. Definition of "any animal"

■ 9. Defendant argues that the phrase "any animal" in the cruelty to animals statute does not apply to game animals. Defendant also argues that the Supreme Court's observation in *State v. Buford*, 65 N.M. 51, 58, 331 P.2d 1110, 1115 (1958), that "[t]he language of the statute ... seems to apply only to brute creatures and work animals" is persuasive authority that this court should follow. However, the language Defendant relies on in *Buford* is dicta. Indeed, *Buford* declined to find whether gamecocks were included in the definition of any animal. *Buford*, 65

N.M. at 52, 331 P.2d at 1111 (assume for purposes of appeal that gamecocks fall within statute).

10. To aid us in determining what animals are typically protected under cruelty to animals statutes, we look to the laws of other jurisdictions. Kentucky's cruelty to animals statute defines "animal" as including "all warm-blooded living creatures except human beings." *Munn v. Commonwealth*, 889 S.W.2d 49, 50 (Ky.Ct.App.1994). Similarly, Florida defines "animal" as "every living dumb creature." *Wilkerson v. State*, 401 So.2d 1110, 1112 (Fla.1981) (quoting Fla.Stat. § 828.02 (1979)). Conversely, Texas defines "animal" within its cruelty to animals statute as "a domesticated living creature and wild living creature previously captured." *Tilbury v. State*, 890 S.W.2d 219, 220 (Tex.Ct. App.1994) (quoting Tex. Penal Code § 42.09 (Vernon 1994)).

■ 11. Unlike other states, New Mexico does not define "animal" within its cruelty to animals statute. In interpreting a statute, one should look to the harm or evil that the statute was designed to prevent. *State v. Ogden*, 118 N.M. 234, 244, 880 P.2d 845, 855 (Ct.App.1994). The State argues that the clear intent of the legislature was to protect all animals from the cruel infliction of pain and suffering imposed by individuals.

12. We find the State's argument persuasive especially in light of the effect of accepting Defendant's argument to exclude game animals from coverage under the cruelty to animals statute. Interpreting the cruelty to animals statute to apply only to domesticated animals or livestock may also exempt from protection many animals besides game animals, which do not fall under any of those classes, i.e. coyotes, raccoons, reptiles. *See State v. Rowell*, 121 N.M. 111, 114, 908 P.2d 1379, 1382 (1995) (words of a statute are to be given their plain meaning unless this creates an absurd or unjust result). Applying the statute as Defendant proposes, leaving many animals unprotected, would create an unjust or absurd result.

13. It is also significant that within other sections of the criminal code dealing with animals, the legislature specifically referred

to whether domesticated animals or livestock were covered. NMSA 1978, § 30–18–2 (1963) (applying to any animal or domesticated fowl); NMSA 1978, § 30–18–2.1 (1981) (applying to domestic canine animals); NMSA 1978, § 30–18–4 (1963) (applying to livestock). Because of the specificity used in other portions of the act, it is reasonable to assume that the absence of such specificity in the cruelty to animals statute means the legislature intended "animal" to have a broad definition. *Cf. Patterson v. Globe Am. Cas. Co.*, 101 N.M. 541, 543, 685 P.2d 396, 398 (Ct.App.1984) (where legislature has demonstrated that it can create a private right of action when it wants to, the fact that no such language appears in the Unfair Insurance Practices Act indicates, by negative inference, that the legislature did not intend to create one). Therefore, we conclude that the cruelty to animals statute applies to game animals.

14. Finally, Defendant argues that the rule of lenity should apply. *See Ogden*, 118 N.M. at 242, 880 P.2d at 853 (lenity in construing penal statutes applies in "those situations in which a reasonable doubt persists about a statute's intended scope even *after* resort to 'the language and structure, legislative history, and motivating policies' of the statute") (quoting *Moskal v. United States*, 498 U.S. 103, 108, 111 S.Ct. 461, 465, 112 L.Ed.2d 449 (1990)). The plain language of the cruelty to animals statute is not ambiguous; therefore the rule of lenity does not apply.

15. For the reasons stated above, Defendant's convictions are affirmed.

16. **IT IS SO ORDERED.**

PICKARD and WECHSLER, JJ., concur.