2005-NMCA-083

115 P.3d 236

**STATE of New Mexico,**
**Plaintiff–Appellee,**

v.

**Calvin PARSON, Defendant–Appellant.**

No. 24,451.

Court of Appeals of New Mexico.

June 14, 2005.

———

Patricia A. Madrid, Attorney General, Santa Fe, NM, Jacqueline R. Medina, Assistant Attorney General, Albuquerque, NM, for Appellee.

John Bigelow, Chief Public Defender, Sheila Lewis, Appellate Defender, Santa Fe, NM, for Appellant.

**OPINION**

SUTIN, Judge.

{1} Defendant Calvin Parson unlawfully transported elk heads. He appeals his convictions under felony statutes outlawing "transporting . . . stolen or unlawfully possessed livestock or any unlawfully possessed game animal, or any parts thereof," NMSA 1978, § 30–18–6 (1963), and conspiring to commit that crime, see NMSA 1978, § 30–28–2(A) (1979). He grounds his appeal on the view that he should have only been charged with a misdemeanor under the more specifically applicable game and fish laws in NMSA 1978, §§ 17–2–7 and –20.3 (1979), and NMSA 1978, § 17–2–10 (1999). We agree with Defendant and reverse.

**BACKGROUND**

{2} In presenting its case, the State put on testimony regarding an unlawful, multi-million dollar elk head and antler trophy business. The testimony included a description of a joint investigation into waste of wildlife and illegal antler trade by the New Mexico Department of Game and Fish and the Colorado Division of Wildlife. In the investigation, Department personnel discovered the carcasses of two decapitated mature bull elk. The investigation led to a possible poacher by the name of Zach Romero and then to Defendant. Each was charged with a violation of Section 30–18–6 and charged with conspiracy to violate Section 30–18–6, pursuant to Section 30–28–2(A). These crimes are fourth degree felonies. §§ 30–18–6, 30–28–2(B)(3).

{3} The linking of firearm shell casings found at the sites of the killed elk with cartridges in Defendant's home, the linking of DNA from blood of the elk and blood found in Defendant's van, and testimony of Romero in Defendant's trial that the two shot the elk in question out of season and transported the elk heads, led to Defendant's convictions on both charges. Before he testified against Defendant, Romero pled guilty to the same charges.

{4} Defendant sought dismissal of the charges on the ground that he was improperly charged under Section 30–18–6 instead of under the game and fish laws. He argued that the felony statute under which he was convicted was a general statute, whereas the applicable misdemeanor game and fish statutes were the more specific, and that the State was required to prosecute him under the more specific statutes. Defendant's ar-

gument on this issue centered on *State v. Cleve,* 1999–NMSC–017, 127 N.M. 240, 980 P.2d 23, in which the Court held that NMSA 1978, § 30–18–1 (1963, repealed 1999) (amended 2001) (cruelty to animals), one of the many animal-related statutes in Article 18 of the New Mexico Criminal Code (Chapter 30), did not apply to Defendant's conduct in "snaring two deer." *Cleve,* 1999–NMSC–017, ¶ 37, 127 N.M. 240, 980 P.2d 23. The Supreme Court construed the words "any animal" in Section 30–18–1 to mean "domestic animals and wild animals in captivity," and determined that the conduct was covered under the more specific game and fish laws. *See Cleve,* 1999–NMSC–017, ¶¶ 34–37, 127 N.M. 240, 980 P.2d 23.

{5} The district court denied Defendant's motions to dismiss, distinguishing *Cleve* on the basis that Section 30–18–1 in *Cleve* and Section 30–18–6 in the present case were different statutes. In making the distinction, the Court focused mostly on the proscribed conduct of "transporting" a game animal or a part of a game animal in Section 30–18–6.

{6} Defendant asserts on appeal that: (1) Section 30–18–6 applies only to elk when elk are being raised as livestock, and not to free-roaming, wild elk and, therefore, the State failed to prove that Defendant stole livestock as defined by the statute; (2) under a plain meaning analysis, the State was required to charge Defendant under the game and fish statutes; and (3) if the plain meaning rule is inapplicable, then *Cleve's* determination of legislative intent that the game and fish laws are an exception to the animal-related statutes in Article 18 of the Criminal Code controls.

## DISCUSSION

### I. Standard of Review

{7} We decide the issues in this case based on statutory construction alone. Our review, therefore, is de novo. *See State v. Rowell,* 121 N.M. 111, 114, 908 P.2d 1379, 1382 (1995).

### II. The Statutes

{8} We preface our discussion of Defendant's points on appeal by discussing Chapter 30, Article 18 of our statutes, and by setting out the various statutes on which Defendant relies, together with a fuller discussion of *Cleve.*

### Article 18

{9} Article 18 of Chapter 30 relates to "animals" generally. Several specific statutes relate to cruelty to animals and the seizure, disposition, and award of costs in connection with animals endangered from cruel treatment. *See* § 30–18–1; NMSA 1978, §§ 30–18–1.1, –1.2, –1.3 (1999). Several of the other sections in Article 18 expressly mention "livestock" or obviously cover livestock by referring to "cattle" or "cow." *See* NMSA 1978, § 30–18–3(C) (1963); NMSA 1978, §§ 30–18–4, –5, –6, –8, –12, –14 (1963, as amended through 2001). One of these sections relates to injury to livestock that is the property of another and defines "livestock" as "used in this section." *See* § 30–18–12(B). The definition there does not include the family cervidae or elk. *Id.* Section 30–18–14 authorizes livestock inspectors who are certified peace officers to enforce "criminal laws relating to livestock," including those in Article 18.

{10} Several provisions in Article 18 that do not expressly or exclusively relate to clearly domesticated animals such as livestock, cattle, dogs, equines (horse, pony, mule, donkey or hinny), are nevertheless obviously or likely meant to cover only domesticated animals. *See* §§ 30–18–3; –4(D), (E), (F); –6;–7; –15. Section 30–18–3 covers unlawful branding. Section 30–18–4 covers the unlawful disposition of animals that are owned or are the property of others. Section 30–18–6, which proscribes transporting "stolen" livestock and defines this as transporting "stolen or unlawfully possessed livestock or any unlawfully possessed game animal," by use of the word "stolen" implies the taking of property from another. *See Merriam Webster's Collegiate Dictionary* 1150 (10th ed.1996) (defining "steal" to mean "to take the property of another wrongfully"). Section 30–18–7 relates to misrepresentation of the pedigree of an animal. Section 30–18–15, the last section in Article 18, proscribes certain injections by personnel of an animal control service or facility, animal shelter, or humane society.

{11} Only two provisions in Article 18 use the words "game animal." Section 30–18–6, as indicated earlier in this opinion, proscribes the transporting of an unlawfully possessed game animal. Section 30–18–10 excludes from Article 18 proscriptions "the taking of game animals, game birds or game fish by the use of dogs" under certain circumstances.

### The Livestock Code

{12} Defendant turns to the Livestock Code, NMSA §§ 77–2–1 to –18–4 (1869, as amended through 2004), which states that, "[a]s used in The Livestock Code ... 'animals' or 'livestock' means all domestic or domesticated animals that are used or raised on a farm or ranch, including ... farmed cervidae upon any land in New Mexico." § 77–2–1.1(A). Based on these definitions and pointing out that "cervidae" are elk and deer, Defendant contends that "game animals" as used in Section 30–18–6 do not include free-roaming animals.

### Game and Fish Laws

{13} The game and fish laws are found in Chapter 17 of the statutes. *See* NMSA 1978, §§ 17–1–1 to 17–8–6 (1912, as amended through 2003). Defendant contends that the State's evidence established nothing more than that the elk in question were free-roaming, wild animals protected under the game and fish laws. Defendant cites, in particular, Sections 17–2–3(A)(4), –7, –10, and –20.3. Section 17–2–3(A)(4) lists certain "game mammals" as protected wildlife species. Among the game mammals listed is "the family Cervidae." *Id.* Under Section 17–2–7(A)(1) and (2), unless permitted under regulations or law, "it is unlawful to[ ] hunt, take, capture, [or] kill ... any game animal," and it is unlawful to "possess ... all or any part of any game animal." Section 17–2–10(A) states that it is a misdemeanor to violate any provision of Chapter 17 or any regulations "that relate to the time, extent, means or manner that game animals ... may be hunted, taken, captured, killed, possessed, sold, purchased or shipped." Section 17–2–20.3 states that the "illegal possession or transportation of big game during closed season" is a misdemeanor, and, further, that "taking or attempting to take big game during closed season," and "selling or attempting to sell big game or parts thereof" without a permit, are misdemeanors. § 17–2–20.3(A), (B), (D).

### State v. Cleve

{14} In *Cleve*, only the cruelty to animals provision in Article 18, namely, Section 30–18–1, was at issue. *Cleve*, 1999–NMSC–017, ¶ 7, 127 N.M. 240, 980 P.2d 23. The defendant in *Cleve* was convicted of cruelty to animals under Section 30–18–1 and unlawful hunting under Section 17–2–7(A). *Cleve*, 1999–NMSC–017, ¶¶ 5–6, 127 N.M. 240, 980 P.2d 23. In regard to Section 30–18–1, the question in *Cleve* was whether "any animal" in that statute meant all animals, including game animals. 1999–NMSC–017, ¶¶ 7, 9, 127 N.M. 240, 980 P.2d 23. Interpreting Section 30–18–1, the Court read the three subsections of the statute as it then existed to "prohibit behavior that could only apply to domesticated animals or wild animals previously reduced to captivity[.]" *Cleve*, 1999–NMSC–017, ¶ 12, 127 N.M. 240, 980 P.2d 23. The Court concluded that "the Legislature intended that the phrase 'any animal' denote domesticated animals and wild animals in captivity throughout Section 30–18–1." *Cleve*, 1999–NMSC–017, ¶ 12, 127 N.M. 240, 980 P.2d 23. The Court also "conclude[d] that the Legislature enacted the entire [Article 18] with the exclusive purposes of controlling certain human behavior in relation to domesticated animals and protecting the property rights of the owners of domesticated or previously captured wild animals." *Id.* ¶ 13. Section 30–18–6 was among the statutes in Article 18 specifically referred to by the Court that paved the way for the Court's statement that, "[e]ach of these other statutes exclusively concern livestock and other animals possessed by humans[.]" *Cleve*, 1999–NMSC–017, ¶ 13, 127 N.M. 240, 980 P.2d 23. As to Section 30–18–1, in studying the context surrounding its enactment, the Court concluded that the Legislature intended to exclude wild animals from its protection. *Cleve*, 1999–NMSC–017, ¶ 15, 127 N.M. 240, 980 P.2d 23.

{15} The Court in *Cleve* then turned to game and fish laws, including the unlawful hunting statute under which the defendant was charged, Section 17–2–7. *Cleve*, 1999–NMSC–017, ¶¶ 16, 31, 29–34, 127 N.M. 240, 980 P.2d 23. The Court looked at these laws in the context of the general/specific rule of statutory construction. *Id.* ¶¶ 16–36. *Cleve* concluded "that the Legislature did not intend for Section 30–18–1 to apply to hunting activities contemplated by New Mexico's specific laws governing game and fish." *Id.* ¶ 18. The Court held:

> [T]he overall statutory scheme governing hunting and fishing demonstrates a legislative intent to preempt the application of Section 30–18–1 to game and fish with respect to conduct contemplated by game and fish laws. We believe that the general/specific statute rule therefore provides additional support for our interpretation of Section 30–18–1.

*Id.* ¶ 16. The Court further concluded that:

> [E]ven if the Legislature had intended to protect wild animals in Section 30–18–1, the Legislature, having dealt with the subject of the hunting of game animals more particularly in the game and fish laws, intended to create an exception from the cruelty-to-animals statute for hunting and fishing activity contemplated by game and fish laws.

*Id.* ¶ 35.

{16} The general/specific statute rule discussed and applied in *Cleve* was reconfirmed as a rule to "determine legislative intent in the context of potentially conflicting laws" in *State v. Santillanes*, 2001–NMSC–018, ¶ 11, 130 N.M. 464, 27 P.3d 456. The *Cleve* preemption analysis appears to have been disfavored in *Santillanes* as a label that "do[es] not serve [its] intended purpose of clarifying the general/specific statute rule." *Id.*

{17} The version of Section 30–18–1 addressed in *Cleve* was repealed in the 1999 legislative session and reenacted in the same session with significant changes and as a considerably more comprehensive statute. *See* 1999 N.M. Laws ch. 107, § 1; 2001 N.M. Laws ch. 81, § 1. *Cleve*, 1999–NMSC–017, 127 N.M. 240, 980 P.2d 23, filed March 11, 1999, does not mention this 1999 legislative activity. It would appear that the legislation was at least in part a reaction to this Court's 1997 decision in *Cleve*, which interpreted Section 30–18–1 to apply to wild animals including the deer that the defendant in that case snared. *See State v. Cleve*, 1997–NMCA–113, ¶ 13, 124 N.M. 289, 949 P.2d 672, *rev'd by* 1999–NMSC–017, 127 N.M. 240, 980 P.2d 23. The 1999 reenacted Section 30–18–1 covers, in part, negligently "killing without lawful justification . . . an animal[,]" "intentionally . . . mutilating, injuring or poisoning an animal[,]" and "maliciously killing an animal." § 30–18–1(B)(1), (E)(1), (2) (2001). The reenactment states, however, that the provisions of the section "do not apply to . . . fishing, hunting, falconry, taking and trapping, as provided in Chapter 17 NMSA 1978[.]" § 30–18–1(I)(1). The question is whether the change in Section 30–18–1 affects the precedential value of *Cleve*.

{18} We see nothing in the 1999 reenactment of Section 30–18–1 that reflects a legislative intent to cover the hunting, capturing, or killing of free-roaming, wild elk or the transporting of such elk after being hunted, captured, or killed. To the contrary, that section contains the express statement that the section's provisions do not apply to activities under Chapter 17. Chapter 17 is comprehensive regulatory legislation to protect free-roaming, wild game animals through State regulation of hunting, taking, capturing, killing, and possessing free-roaming, wild game animals, specifically including elk. *See* §§ 17–1–1, 17–2–1, –2, –3. We read the exclusion in Section 30–18–1(I)(1) to mean that Section 30–18–1 does not criminalize conduct regulated under Chapter 17. Thus, while Section 30–18–1 was substantially changed during the formation and filing of the *Cleve* opinion in 1999, we doubt that the Legislature was attempting to write Section 30–18–1 to apply to the hunting and killing of free-roaming, wild animals regulated under Chapter 17. Rather, we construe the legislative intent in enacting Section 30–18–1(I) to be in sync with the Supreme Court's analysis and holding in *Cleve*.[1]

---

1. We are not saying that *Cleve* forecloses any

circumstance in which a person's cruelty to a

{19} We believe that *Cleve's* assessment that Article 18 was intended to cover only "domesticated or previously captured wild animals" remains valid. The fact that reenacted Section 30–18–1(A) expressly also excludes "insects" and "reptiles," and also expressly does not apply to the practice of veterinary medicine, or rodent and pest control, *see* § 30–18–1(I)(2), (3), does not raise a reasonable doubt as to the validity of *Cleve's* assessment of the legislative intent behind Article 18.

### III. The Parties' Arguments

{20} In his appellate arguments, Defendant first asserts that Section 30–18–6 proscribes only the transportation of elk being raised as livestock, and bases this assertion on the various statutes in Chapters 17 and 77 discussed earlier in this opinion. He next relies on *Cleve's* general/specific legislative intent analysis, asserting that the State can charge him only with a more specific statute in Chapter 17. His third and final assertion is that if this Court were to conclude that Section 30–18–6 and statutes in the Chapter 17 game and fish laws give rise to legitimate, differing interpretations, requiring a contextual analysis (history, apparent object, statutes in pari materia), we are bound by *Cleve's* holding that the game and fish laws demonstrate a legislative intent to preempt application of Section 30–18–6.

{21} The State asserts that the words in Section 30–18–6 are plain and clear, making no distinction between farmed and free-roaming elk. The State argues that if the Legislature intended in Section 30–18–6 to exclude illegally possessed free-roaming, wild game, it could easily have expressed that intent in the statute. The State further argues that no provision in the game and fish statutes specifically addresses the acts of transporting unlawfully possessed game animal parts, whereas Section 30–18–6 does specifically address that activity. According to the State, Section 17–2–10 does not outlaw the *transporting* of trophy elk heads, and Section 17–2–20.3 does not outlaw the trans-

porting of *parts*. The State's only substantive law-related reference to *Cleve* is one parenthetically indicating that *Cleve* is contrary to the State's view that "the [L]egislature's intentional use of the phrase (or game animals) in the transporting stolen livestock statute, as opposed to simply using the term or 'any animal' or 'livestock', supports that conclusion that the [L]egislature intended for the transporting stolen livestock statute to concern more than just animals possessed by humans."

### IV. Defendant Was Chargeable Only Under the Game and Fish Laws

{22} Section 30–18–6 was originally enacted in 1963 as part of an "Act Providing for a Revised Criminal Code." *See* 1963 N.M. Laws ch. 303, § 18–6. The title and content of Section 30–18–6 have remained unchanged. The appearance of "game animal" in a statute titled "Transporting Stolen Livestock" that is surrounded by statutes intended for the most part, if not exclusively, to relate only to domesticated animals, gives appropriate pause in considering what animals the words "game animals" in that statute were meant to include. *See Harriett v. Lusk*, 63 N.M. 383, 388, 320 P.2d 738, 742 (1958) (stating that the title of an act may be utilized as an aid in determining legislative intent and to resolve doubts as to meanings); *Serrano v. Dep't of Alcoholic Beverage Control*, 113 N.M. 444, 447, 827 P.2d 159, 162 (Ct.App.1992) (stating that a legislatively enacted section heading may be useful in determining legislative intent in an ambiguously drafted statute). *Cleve* necessitates a cautious analysis. *Cleve* also provides the analytic basis for decision. The game and fish laws in Chapter 17 are expressly intended to cover free-roaming, wild game elk; the animal statutes in Article 18 of Chapter 30 are not. The game and fish laws more specifically apply to the elk and trophy-head hunting and transporting than do the animal statutes.

{23} As indicated earlier in this opinion, Section 17–2–3, which covers protected wild-

---

wild game animal can be prosecuted under Section 30–18–1. For example, a person who is not hunting or searching out free-roaming, wild elk might come across an injured elk and treat the

animal in a manner proscribed under Section 30–18–1 and not covered under Chapter 17. It may be that such conduct is subject to prosecution under Section 30–18–1.

life species, specifically defines "game mammals" to include "all of the family Cervidae (elk and deer)." § 17–2–3(A)(4). Under Section 17–2–7(A)(1) and (2), it is unlawful to hunt, take, capture, kill, or possess any game animal except as permitted by regulations or other laws. Section 17–2–10(A) prescribes up to six months imprisonment for any person who violates a Chapter 17 provision "relat[ing] to the time, extent, means or manner that game animals . . . may be hunted, taken, captured, killed, possessed, sold, purchased or shipped." Further, Section 17–2–20.1(A)(1) and (A)(2) refers to the crimes of "illegal possession or transportation of big game," and "taking big game during closed season." Further, under Section 17–2–20.3(A), (B), (C), and (D), the following constitute misdemeanors: illegal possession or transportation of big game and the taking or attempting to take big game during closed season; and selling or attempting to sell big game or parts thereof, except by regulation of the State game commission.

{24} The evidence against Defendant proved that he transported the head of an elk. The State did not attempt to prove that the elk had been domesticated or was not a free-roaming, wild elk. The evidence was sufficient to charge Defendant with violating the game and fish laws. The Legislature intended the game and fish statutes to apply to Defendant's actions and did not intend Section 30–18–6 to apply to Defendant's actions. To the extent the public may be dissatisfied with only misdemeanor punishment for elk head trophy hunting and simultaneous carcass waste, the Legislature may want to consider increasing the penalty under the game and fish laws.

**CONCLUSION**

{25} We hold that Defendant could be convicted, if at all, only under the game and fish laws, and not under Section 30–18–6, for transporting heads of free-roaming, wild elk. We therefore reverse Defendant's convictions.

{26} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE, Chief Judge and RODERICK T. KENNEDY, Judge.