# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: <u>August 4, 2015</u>

**NO. 34,097**

**WILD HORSE OBSERVERS**
**ASSOCIATION, INC.,**

      Plaintiff-Appellant,

v.

**NEW MEXICO LIVESTOCK BOARD,**

      Defendant-Appellee,

and

**SUSAN BLUMENTHAL, ASH COLLINS,**
**SUSAN COLLINS, JON COUCH, PETER**
**HURLEY, JUDITH HURLEY, ZANE**
**DOHNER, CAROLYN E. KENNEDY,**
**LYNN MONTGOMERY, JOE NEAS,**
**MIKE NEAS, and PAMELA NEAS,**

      Defendants by Intervention-Appellees.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Valerie A. Huling, District Judge**

Steven K. Sanders & Associates, LLC
Steven K. Sanders
Albuquerque, NM

for Appellant

Budd-Falen Law Offices, LLC
Andrea Buzzard
Karen Budd-Falen
Cheyenne, WY

for Appellee

David G. Reynolds
Corrales, NM

for Intervenors

**_____OPINION**

**SUTIN, Judge.**

{1}     Plaintiff Wild Horse Observers Association, Inc. (the Association) appeals the district court's dismissal for failure to state a claim under Rule 1-012(B)(6) NMRA. The Association claims that Defendant New Mexico Livestock Board (the Board) has unlawfully treated a group of undomesticated, unowned, free-roaming horses near Placitas, New Mexico (the Placitas horses) as "livestock" and "estray" rather than as "wild horses" under the Livestock Code, NMSA 1978, §§ 77-2-1 to -18-6 (1967, as amended through 2015). The Board and various residents and homeowners in Placitas (Intervenors) maintain that the horses are estray livestock and argue that the Association's appeal is both moot and barred by collateral estoppel.

{2}     Primarily at issue is whether the Association pleaded facts that, when accepted as true, sufficiently demonstrated that the Placitas horses are legally "wild horses" rather than "livestock" and "estray." We conclude that "livestock" does not include undomesticated, unowned animals, including undomesticated and unowned horses; therefore, undomesticated, unowned horses may not be "estray." We also conclude that Section 77-18-5(B) requires the Board to DNA test and relocate wild horses. We hold that the Association pleaded sufficient facts in its complaint to withstand a motion to dismiss under Rule 1-012(B)(6).

**BACKGROUND**

{3}     In February 2014, the Association filed a complaint for declaratory and injunctive relief, claiming that the Board had unlawfully treated the Placitas horses as if they were estray livestock rather than wild horses. The Association claimed that only livestock may be estray, and since the Placitas horses are not livestock, they cannot be estray. The Association sought an order declaring the Placitas horses wild as opposed to estray; declaring that the Board failed to comply with Section 77-18-5(B) because the Board did not DNA test and relocate the wild horses; declaring that the Board acted ultra vires by capturing wild horses on public land and subsequently selling the wild horses; enjoining the Board from disallowing the Association from managing the Placitas horse population with equine birth control; and awarding the Association equitable costs and relief.

{4}     The following averments appear in the Association's complaint. The Placitas horses are a group of ownerless, unbranded horses that have lived and roamed on public land near Placitas, New Mexico, since at least 1965. The Placitas horses do not now have nor have ever had owners, and no private landowner, rancher, horse rescue, or Indian tribe currently claims the horses. The Board has no record of ownership for the Placitas horses. At the time of the Association's initial complaint, approximately forty Placitas horses still roamed the Placitas area.

{5} The Association further averred that the Board impounded and auctioned at least twenty-five of the Placitas horses. The Association averred that the Board took the auctioned Placitas horses directly from public land before auctioning them. According to the complaint, no owner claimed the horses during the auction process and no owners have claimed the Placitas horses since they were sold.

{6} The Board responded to the Association's complaint by filing a motion to dismiss for failure to state a claim under Rule 1-012(B)(6). The Board argued that "livestock" as defined in the Livestock Code includes horses, and therefore the Placitas horses were livestock. The Board further argued that because "estray" means "livestock found running at large . . . whose owner is unknown," as defined in Section 77-2-1.1(N), and because the Placitas horses' owners are unknown, the Placitas horses are plainly both livestock and estray—not wild as the Association contended. The Board also argued that carving out wild horses, including the Placitas horses, as an exception to the definition of "livestock" would create an absurd exception to the Livestock Code, as wild horses would be exempt from all laws pertaining to livestock, including transportation, inspection, and cruelty statutes. As a second ground to dismiss for failure to state a claim, the Board argued that Section 77-18-5(B) does not require the Board itself to test and relocate horses, so no claim may be stated against it under that statute. Finally, the Board argued that the Association's

3

claims were barred by collateral estoppel and that the Association lacked standing to maintain the action.

{7} The district court granted the Board's motion to dismiss on the ground that the Association failed to state a claim upon which relief could be granted and did not reach the collateral estoppel and standing issues. Specifically, the district court held that the Association's "claims fail to demonstrate that the [Placitas] horses . . . are not estray livestock[.]" The district court reasoned that "horses" are included within the definition of "livestock," and therefore the Placitas horses were livestock. The district court additionally reasoned that "the definition of estray does not require an affirmative determination of ownership or lack of ownership but rather broadly encompasses 'livestock . . . whose owner is unknown.' " As such, the district court determined that the Association's complaint failed to plead facts establishing that the Placitas horses were not legally livestock or estray and that the Board had acted unlawfully.

{8} On appeal, the Association argues that the Placitas horses are not "livestock" as defined in Section 77-2-1.1(A) because they have never been raised or used on a farm or ranch and that only livestock may be "estray" as defined in Section 77-2-1.1(N). The Board counters that the Placitas horses are livestock whose owners are unknown; therefore, the horses are plainly estray. The Board and Intervenors also

4

argue that the district court's order should be affirmed under the "right for any reason" doctrine because the Association's claim and appeal are moot and barred by collateral estoppel. Additionally, the Board and Intervenors claim that Section 77-18-5(B) does not require the Board to test or relocate any wild horses.

**{9}** We hold that "livestock," as defined in the Livestock Code, does not include animals that are not domesticated and that the Board is required to test and relocate wild horses under Section 77-18-5. We do not reach the merits of the arguments that the appeal is moot or barred by collateral estoppel. We reverse the district court's dismissal of the Association's complaint and remand for further proceedings.

**DISCUSSION**

**Standard of Review**

**{10}** We review de novo the district court's dismissal for failure to state a claim under Rule 1-012(B)(6). *Valdez v. State*, 2002-NMSC-028, ¶ 4, 132 N.M. 667, 54 P.3d 71. In doing so, "we accept all well-pleaded factual allegations in the complaint as true and resolve all doubts in favor of sufficiency of the complaint." *Id.* Dismissal under Rule 1-012(B)(6) is appropriate only if the plaintiff is unable to recover under any theory of the facts alleged in the complaint. *Callahan v. N.M. Fed'n of Teachers-TVI*, 2006-NMSC-010, ¶ 4, 139 N.M. 201, 131 P.3d 51. In this case, the district court

determined that the Association did not plead sufficient facts to show the Placitas horses were "wild horses" as defined in the Livestock Code.

{11} In resolving the issues before us, we must not only examine the complaint, we must also interpret provisions of the Livestock Code. We undertake statutory interpretation de novo. *Pub. Serv. Co. of N.M. v. N.M. Pub. Util. Comm'n*, 1999-NMSC-040, ¶ 14, 128 N.M. 309, 992 P.2d 860. We are "to determine and give effect to the Legislature's intent. In discerning the Legislature's intent, . . . [the appellate courts] look first to the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended." *Marbob Energy Corp. v. N.M. Oil Conservation Comm'n*, 2009-NMSC-013, ¶ 9, 146 N.M. 24, 206 P.3d 135 (internal quotation marks and citations omitted). In construing a statute, we give effect to a statute's unambiguous meaning, but we will not interpret a statute literally when doing so would lead to an absurd or unreasonable result. *State v. Wyrostek*, 1988-NMCA-107, ¶ 8, 108 N.M. 140, 767 P.2d 379. "Where possible, each and every part of [a] statute must be given some effect in an effort to reconcile it in meaning with every other part." *Postal Fin. Co. v. Sisneros*, 1973-NMSC-029, ¶ 8, 84 N.M. 724, 507 P.2d 785.

**Wild, Undomesticated Horses Are Not Estray Because They Are Not Livestock**

{12}     Under the Livestock Code, "estray" means in pertinent part "*livestock* found running at large upon public or private lands, either fenced or unfenced, whose owner is unknown[.]" Section 77-2-1.1(N) (emphasis added). "Livestock" means "all domestic or domesticated animals that are used or raised on a farm or ranch . . . and includes horses, asses, mules, cattle, sheep, goats, swine, bison, poultry, ostriches, emus, rheas, camelids[,] and farmed cervidae upon any land in New Mexico." Section 77-2-1.1(A). A "wild horse" is "an unclaimed horse on public land that is not an estray." Section 77-18-5(A)(4).

{13}     The Association contends that the Placitas horses are not livestock because the Placitas horses have never been domesticated or used or raised on a farm or ranch. According to the Association, the language "domestic or domesticated" and "used or raised on a farm or ranch" is a definitional requirement. Thus, a horse must be domesticated and used or raised on a farm or ranch to be considered livestock, and the language "livestock . . . includes horses . . . upon any land in New Mexico" does not change the definitional requirement. Section 77-2-1.1(A). The Board and Intervenors, on the other hand, contend that the plain and unambiguous definition of "livestock" means and includes all horses everywhere in New Mexico. The Board and Intervenors further argue that carving wild horses out of the definition of "livestock"

7

would be illogical, impractical, and unfeasible to implement because wild horses would be exempt from cruelty, sale, and transportation provisions of the Livestock Code.

{14}     We agree with the Association and conclude that "livestock" does not include undomesticated animals. We also agree that enumerated examples of "domestic or domesticated animals that are used or raised on a farm or ranch" in Section 77-2-1.1(A) do not mean all such animals in New Mexico are livestock and potentially estray. For example, sheep, bison, poultry, and farmed cervidae (e.g., deer and elk), like horses, are all included in the definition of "livestock." *See id.* However, a substantial amount of bighorn sheep, bison, turkey, deer, and elk are wild animals commonly found in New Mexico. The Board is required to search for the owner of estray livestock, publish notice of the impoundment of estray livestock, and eventually sell estray livestock for the benefit of the legal owner. *See* §§ 77-13-1 to -10. Surely, the Legislature did not intend to require that the Board search for the owner of wild animals, including sheep, bison, turkey, deer, elk, and other wild animals that are not domesticated, impound them, proceed to publish notification of the impoundment, and then proceed to sell them.

{15}     Further, wild sheep, bison, turkey, deer, and elk are all considered game animals elsewhere in our statutes. *See* NMSA 1978, § 17-2-3 (1967, amended 2015)

8

(defining "game mammals" to include American bison "except where raised in captivity for domestic or commercial meat production[,]" bighorn sheep "except for the domestic species of sheep[,]" deer and elk, and "game birds" to include turkeys "except for the domestic strains of turkeys"). Interpreting these definitions together, it would be absurd to consider all sheep, bison, turkey, deer, and elk anywhere in New Mexico to be livestock, but that some are allowed to be hunted and killed, with the appropriate license, rather than impounded and auctioned. Rather, in order to give effect to both statutes and avoid an unreasonable result, we interpret the definition of "livestock" to include only domestic or domesticated animals, while "game animal" includes only wild animals. Thus, we reject the argument that all horses anywhere in New Mexico are livestock because horses are included within the definition of livestock.

{16}     Other case law dealing with whether an animal is wild or domesticated is instructive. In *State v. Parson*, this Court considered whether a criminal defendant could be charged under two laws covering roughly the same conduct. 2005-NMCA-083, 137 N.M. 773, 115 P.3d 236. In *Parson*, the defendant was convicted for transporting elk heads under animal cruelty laws, but the defendant argued that he should have been convicted under more specific game and fish laws providing for illegal possession of game animal parts. *Id.* ¶ 1. Relying in part on the

9

general/specific rule of statutory interpretation, we held that game and fish laws covered wild, undomesticated, free-roaming elk, while the general animal cruelty statute pertained to domesticated elk. *Id.* ¶ 22. We treated the question whether the elk was domesticated or wild as a factual issue and reversed the defendant's conviction under general animal cruelty laws. *Id.* ¶ 24. The Association's argument is similar here: the Placitas horses are wild, undomesticated, unowned, and free-roaming and are therefore not subject to livestock and estray provisions, but rather the more specific statute pertaining to wild horses. Our interpretation of the Livestock Code and its definition of "livestock" accords with *Parson* in that we interpret the livestock and estray provisions to pertain only to domesticated horses rather than wild, free-roaming horses.

{17}    The Board and Intervenors contend that considering wild horses as outside the definition of "livestock" is an absurd interpretation that would create dangerous loopholes in the law. These supposed loopholes, however, do not survive close examination. First, the Board and Intervenors argue that wild horses would be exempt from transportation laws pertaining to livestock, specifically laws requiring permits to transport livestock. However, the statutes governing horse transportation refer specifically to "any horses" and "each horse" rather than "livestock," so it appears that wild horses would be subject to those provisions although they are not livestock.

*See* §§ 77-9-41 to -42 (providing for the unlawful transport of "any horses" and requiring an owner's transportation permit "for each horse"). Second, the Board and Intervenors argue that wild horses will be exempt from cruelty statutes that refer specifically to "livestock." *See* § 77-18-2. Although wild horses may not be protected by cruelty to livestock statutes, they would be covered by general animal cruelty statutes if they are in captivity. *See State v. Cleve*, 1999-NMSC-017, ¶ 12, 127 N.M. 240, 980 P.2d 23 (interpreting NMSA 1978, Section 30-18-1 (1999, amended 2007) to apply to domesticated animals and wild animals in captivity). Further, the protections available in the general animal cruelty statute, NMSA 1978, § 30-18-1.1 (1999), are identical to the ones in the more specific cruelty to livestock statute, § 77-18-2, therefore, there would be no gap in the protection of wild horses in captivity and domesticated horses in captivity.[1] Thus, interpreting wild horses as distinct from livestock does not create as dangerous a loophole as the Board and Intervenors suggest. To the extent that wild horses not in captivity appear to be unprotected by animal cruelty statutes, perhaps our Legislature has a void to fill.

{18}     The Board also asserts that it would be "novel, unworkable[,] and foreign to the [Livestock] Code" to require a livestock inspector to make a determination about

---

[1] Wild animals not in captivity are not protected by animal cruelty statutes. *Cleve*, 1999-NMSC-017, ¶ 15 (concluding that "the Legislature intended the phrase 'any animal' [throughout Section 30] to include domesticated animals and wild animals in captivity and did not intend to include other wild animals").

11

whether a horse is domesticated or wild. We disagree. Wild horses are referred to in two statutes in the Livestock Code. Section 77-18-5 pertains to testing and relocating wild horses captured on public land, and Section 77-2-30 pertains to horse rescue and retirement facilities. *See* § 77-2-30(A) (providing for horse rescue or retirement facilities, including preserves and reserves, that care for "captured wild horses that cannot be returned to their range"). Section 77-2-30 does not define "wild horses," but the New Mexico Administrative Code does, in 21.30.5.7(F) NMAC (07/15/2005, as amended through 07/15/2014), governing horse rescue facilities. Given that 21.30.5.7(F) NMAC, defining a "wild horse" as a feral horse that "exist[s] in an untamed state having returned to a wild state from domestication[,]" is among the governing regulations issued by the Board itself in July 2005, and given the language within the Livestock Code that a "feral hog" is a pig that "exists in an untamed state from domestication[,]" § 77-18-6(D), it does not appear to be novel or foreign to the Livestock Code or the Board to require an inspector to make such a determination with regard to a horse.

**Section 77-18-5(B) Creates Duties for the Board**

{19}     The Board and Intervenors cursorily argue that even if the Placitas horses are wild the Association still failed to state a claim against the Board since Section 77-18-5(B) does not explicitly name the Board as responsible to test and relocate wild

12

horses. Thus, according to the Board and Intervenors, no claim may be asserted against the Board under Section 77-18-5(B).

{20} Section 77-18-5(B) states that a wild horse captured on public land "shall have its conformation, history[,] and [DNA] tested[.]" If a horse tests positive as a Spanish colonial, the horse "shall be relocated to a state or private wild horse preserve[,]" and if the horse is not a Spanish colonial, the horse "shall be returned to the public land, relocated to a public or private wild horse preserve[,] or put up for adoption by the agency on whose land the wild horse was captured." *Id.*

{21} The existence of a legal duty is a question of law. *Delfino v. Griffo*, 2011-NMSC-015, ¶ 12, 150 N.M. 97, 257 P.3d 917. Our charge in construing a statute is to give effect to legislative intent. *See id.* "If the Legislature is silent on an issue, we look at the overall structure and function of the statute, as well as the public policy embodied in the statute." *Id.* In interpreting any omission in a statute, we are required to "look at the objectives the [L]egislature sought to accomplish and thereby interpret the statute to achieve [those] purposes." *Morningstar Water Users Ass'n v. N.M. Pub. Util. Comm'n*, 1995-NMSC-062, ¶ 34, 120 N.M. 579, 904 P.2d 28 (internal quotation marks and citation omitted).

{22} We conclude that the Legislature intended to require the Board to test and relocate horses captured on public land as provided under Section 77-18-5(B). The

13

Legislature provided that the Livestock Code "shall be liberally construed to carry out its purposes[.]" Section 77-2-1. The Board was created in order to achieve those purposes, which include goals associated with the "administration of the laws relating to the livestock industry of New Mexico[.]" *Id.*; *see* § 77-2-2 (creating the Board). Section 77-18-5(B) is located within the Livestock Code; therefore, it is counterintuitive to argue that a statute within the Livestock Code was not actually meant to affect the powers and responsibilities of the Board, which is tasked with administering the Livestock Code.

{23} Further, sections within the Livestock Code that do not confer a duty on the Board do so explicitly. Section 77-18-1 provides that the sale, purchase, trade, and possession of certain animals are to be regulated by the Department of Health. As the Board points out, other duties and rights in Section 77-18-5 are explicitly given to parties other than the Board. *See* § 77-18-5(B) (providing that a horse may be put up for adoption "by the agency on whose land the wild horse was captured"); § 77-18-5(C) (providing that the Mammal Division of the Museum of Southwestern Biology at the University of New Mexico may capture, relocate, and, if required, euthanize wild horses). These provisions indicate that if the Legislature meant to task someone other than the Board with testing and relocating wild horses, the Legislature would have done so explicitly.

14

{24} Given the placement of Section 77-18-5 within the Livestock Code and explicit language that creates a right or duty for parties that are not the Board, we conclude that it was the Legislature's intent to require the Board to test and relocate wild horses captured on public land as provided in Section 77-18-5(B).

{25} The Board and Intervenors essentially ask this Court to render Section 77-18-5(B) inert. The Board and Intervenors argue that it is not the Board's responsibility to test and relocate wild horses because the Board is not explicitly tasked with testing and relocating wild horses. No other agency is explicitly tasked with testing and relocating wild horses. *See, e.g.*, § 77-18-1; § 77-18-5(C). If we were to agree with the Board and Intervenors on this argument, the practical effect would be that no one would be required to test or relocate wild horses captured on public land, which is in direct contrast to Section 77-18-5(B). The logical extension of this argument once again leads to an unreasonable result that we cannot accept. In order to give effect to each part of the statute and implement the legislative intent, we conclude that the Board is required to test and relocate horses captured on public land as required by Section 77-18-5(B).

**The Association Pleaded Facts Sufficient to State a Claim**

{26} Having determined that "livestock" does not include horses that are not domesticated and that Section 77-18-5(B) creates duties for the Board, we turn to the

15

Association's initial complaint. We hold that the Association pleaded facts sufficient to state a claim.

{27}    First, the Association's complaint is replete with references to the Placitas horses as wild rather than domestic. Although "wild horses" has a technical definition under the Livestock Code, *see* § 77-18-5(A)(4), we interpret the Association's claims to be that the horses are factually not domesticated, just as the *Parson* case involved whether elk were wild or domesticated as a matter of fact. The Association also repeatedly averred that the Placitas horses are not owned now nor have they been owned in their lives. The Association also averred that the Placitas horses are unbranded, unclaimed, and free-roaming. The Association further asserted that the Board has captured and auctioned at least twenty-five Placitas horses and that the auctioned horses were "taken directly from public land[,]" presumably the Placitas Open Space. Finally, the Association averred that the captured Placitas horses have not been tested to confirm whether they are Spanish colonial horses, as Section 77-18-5(B) requires. These facts, taken as true, adequately state a contention that the Placitas horses fit the criteria of "wild horses" under Section 77-18-5(A)(4), (B), rather than "estray" under Section 77-2-1.1(N), and that the Board unlawfully failed to test and relocate the wild horses it captured. Thus, the Association sufficiently stated a claim against the Board.

16

**Right for Any Reason**

{28}  Intervenors nonetheless urge this Court to affirm the dismissal below under the right-for-any-reason doctrine. Intervenors make the argument under this theory that the Association's appeal is moot. For the following reasons, we decline to affirm based on this argument.

{29}  An appellate court may affirm a district court if it was right for any reason and affirming on new grounds would not be unfair to the appellant. *Bd. of Cnty. Comm'rs v. Chavez*, 2008-NMCA-028, ¶ 12, 143 N.M. 543, 178 P.3d 828. An appellee is not required to preserve arguments to affirm so long as those arguments are not fact-based "such that it would be unfair to the appellant to entertain those arguments." *Piano v. Premier Distrib. Co.*, 2005-NMCA-018, ¶ 17, 137 N.M. 57, 107 P.3d 11. Further, an appellate court may affirm the district court on different grounds than those relied on by the district court only if those grounds do not require looking "beyond the factual allegations that were raised and considered below." *State v. Wasson*, 1998-NMCA-087, ¶ 16, 125 N.M. 656, 964 P.2d 820.

{30}  The basis for Intervenors' mootness argument is found in factual allegations that were not considered below; therefore, it would be unfair to affirm on those grounds, and we decline to do so. Intervenors assert that the Placitas Open Space has been completely rid of horses and completely fenced off since two weeks before the

17

Association filed its claim. As such, Intervenors contend, any controversy that existed over the Board's treatment of horses in the Placitas Open Space is now resolved because there are no horses currently there and no horses are likely to return. In support of these assertions, Intervenors cite a number of affidavits filed in the district court. However, nothing in the record indicates the district court actually considered these affidavits in dismissing the Association's claims. The district court's amended opinion and order does not refer to the affidavits or to any mootness argument. Because these factual allegations were not both raised and considered below, affirming on these grounds would be unfair to the Association, and we will not affirm under the right-for-any-reason doctrine on these grounds.

**Collateral Estoppel**

{31} The Board and Intervenors argue that the Association's claims and appeal are barred by collateral estoppel based on earlier, federal court litigation regarding the Placitas horses. The Association replies that it would be unfair to affirm on this ground because it was not adequately considered below. In *Silva v. State*, our Supreme Court held that "defensive collateral estoppel may be applied when a defendant seeks to preclude a plaintiff from relitigating an issue the plaintiff has previously litigated and lost regardless of whether [the] defendant was privy to the prior suit[.]" 1987-NMSC-107, ¶ 11, 106 N.M. 472, 745 P.2d 380. However, the

"[a]pplicability of collateral estoppel requires factual findings that (1) the party against whom collateral estoppel is asserted must have been a party in . . . the original action; and (2) the two cases must have concerned the same ultimate issue or fact, which was (a) actually litigated, and (b) necessarily determined in the first suit." *Clay v. N.M. Title Loans, Inc.*, 2012-NMCA-102, ¶ 44, 288 P.3d 888 (omission in original) (internal quotation marks and citation omitted). Further, collateral estoppel "should be applied only where the trial [court] determines that its application would not be fundamentally unfair." *Reeves v. Wimberly*, 1988-NMCA-038, ¶ 14, 107 N.M. 231, 755 P.2d 75; *see Padilla v. Intel Corp.*, 1998-NMCA-125, ¶ 10, 125 N.M. 698, 964 P.2d 862; *Callison v. Naylor*, 1989-NMCA-055, ¶ 7, 108 N.M. 674, 777 P.2d 913.

{32}     The district court did not reach the issue of collateral estoppel in its opinion and order, and as such did not make necessary factual findings regarding the applicability of collateral estoppel. *See Silva*, 1987-NMSC-107, ¶ 13 ("In deciding whether to apply the doctrine of collateral estoppel, the threshold issues of fact are for the [district] court to resolve."). Absent any factual findings related to collateral estoppel below, deciding this appeal based on collateral estoppel now would be unfair to the Association. Accordingly, we decline to affirm under the right-for-any-reason doctrine.

**CONCLUSION**

{33} We reverse the district court's opinion and order dismissing the Association's claim and remand for further proceedings.

{34} **IT IS SO ORDERED.**

 

_____
**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**CYNTHIA A. FRY, Judge**