ANGELA M. MAKYNEN *vs.* STEVEN J. MUSTAKANGAS
& others.[1]

No. 93-P-1342.

Worcester. April 12, 1995. - October 10, 1995.

Present: DREBEN, KASS, & GREENBERG, JJ.

*Negligence*, Serving alcoholic liquors to guest, Sale of liquor, Intoxicated
person, Tavern. *Alcoholic Liquors*, Liability of host, Motor vehicle,
Sale to intoxicated person. *Massachusetts Tort Claims Act. Govern-
mental Immunity. Commonwealth*, Claim against.

At the trial of a civil action seeking damages for injuries received in a
motor vehicle accident caused by the negligent operation of a motor
vehicle by an intoxicated person, there was sufficient evidence for the
jury to impose liability on a social host who had made alcoholic bever-
ages available to the driver when the host knew or should have known
that the driver was intoxicated. [310-314]
There was no evidence at the trial of a civil action concerning the behavior
of a patron at a drinking establishment that would put the bar on notice
that the patron was intoxicated and the establishment's motion for
judgment notwithstanding the verdict should have been allowed. [314]

CIVIL ACTION commenced in the Superior Court Depart-
ment on September 19, 1989.

The case was tried before *Judith A. Cowin*, J.

*Carol A. Griffin* for Ronald Mustakangas.

*H. Charles Hambelton* for Pete & Henry's, Inc.

*John A. Wickstrom* (*Mark P. Wickstrom* with him) for
the plaintiff.

*Mary Joan McNamara*, Special Assistant Attorney Gen-
eral, *& Michele A. Kaczynski*, Assistant Attorney General,
for the Commonwealth, submitted a brief.

DREBEN, J. On March 10, 1989, Steven Mustakangas
(Steven), after drinking a number of beers at the house of his

---

[1]Ronald Mustakangas, Pete & Henry's Inc., and the Commonwealth.

uncle, Ronald Mustakangas (Ronald), went to Pete & Henry's, a restaurant with a small bar. He was accompanied by his uncle and his cousin, Mark. The three ordered take-out dinners and had drinks while they were waiting. Ronald paid for the food and drinks. Soon after leaving Pete & Henry's in his automobile, Steven, while driving through property of the Fernald School, was stopped by a police officer for driving twenty miles an hour in a ten mile an hour zone. The Fernald School is a facility of the Commonwealth. The officer, a Commonwealth employee, issued a warning for speeding. About one half an hour later, at about 9:30 P.M., Steven's car crossed into the path of oncoming traffic and collided head-on with the plaintiff's vehicle. The policeman in charge of the investigation considered Steven intoxicated and arrested him for operating under the influence of alcohol and operating to endanger. The plaintiff sued Steven, Ronald, Pete & Henry's, and the Commonwealth. She recovered a jury verdict of $1,200,000 against all four defendants.

Pete & Henry's, Ronald, and the Commonwealth filed timely motions for directed verdicts and for judgment notwithstanding the verdict, which were denied. Pete & Henry's, Ronald, and the Commonwealth appeal from the denial of their motions.[2] We affirm the judgment against Ronald but reverse as to Pete & Henry's and the Commonwealth.

1. *Ronald's liability.* Relying on *McGuiggan* v. *New England Tel. & Tel. Co.*, 398 Mass. 152, 162 (1986), the plaintiff argues that Ronald is liable as a social host. In *McGuiggan*, the Supreme Judicial Court stated that it would recognize such liability

> "to a person injured by an intoxicated guest's negligent operation of a motor vehicle where a social host who knew or should have known that his guest was drunk,

---

[2] Although the plaintiff settled with Pete & Henry's, the settlement was effected after judgment. Pete & Henry's appeal is viable because of the bar's potential liability for contribution. *Bishop* v. *Klein*, 380 Mass. 285, 293 (1980). Steven has not filed an appeal.

nevertheless gave him or permitted him to take an alcoholic drink and thereafter, because of his intoxication, the guest negligently operated a motor vehicle causing the third person's injury."

Subsequent cases clarified that the duty is only imposed "in cases where the host can control and therefore regulate the supply of liquor." The ability to control "is not present when the liquor belongs to the guest." *Ulwick* v. *DeChristopher*, 411 Mass. 401, 406 (1991). *Cremins* v. *Clancy*, 415 Mass. 289, 293-294 (1993).

Ronald claims that there is insufficient evidence that he provided beer or made it available to Steven to impose a legal duty based on the extent of his control over the alcohol consumed by Steven. Nor, Ronald argues, was there any showing that he knew or should have known that Steven was intoxicated. On the basis of the appropriate standard of review, whether "anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff," *Poirier* v. *Plymouth*, 374 Mass. 206, 212 (1978); *Forlano* v. *Hughes*, 393 Mass. 502, 504 (1984), we conclude, while the question is close, that there was sufficient evidence for the jury to find Ronald liable.

The jury could have found the following facts. Steven, age twenty-four, lived off and on with his uncle Ronald in Phillipston. On the day of the accident, Steven arrived at Ronald's home around 6 P.M., made himself something to eat, and took a beer from the refrigerator in the house. He then went into the garage to fix his car. There was a refrigerator in the garage in which Ronald stored beer and soda; Steven and other members of the family were free to take drinks out of that refrigerator. That evening, Steven consumed about five or six bottles of beer taken from the garage refrigerator.[3]

---

[3]Steven testified that both he and his uncle purchased beer and placed it in the garage refrigerator, but Ronald testified that Steven had not put any beer into the refrigerator. The source of the beer Steven drank was in dispute and Steven's testimony at trial did not accord with his depositions. Ronald claimed Steven supplied his own beer.

Ronald also drank with Steven, starting about 7:30 in the evening, but he consumed less beer. Subsequently, Ronald, Mark, and Steven left for Pete & Henry's, which was about ten minutes away, arriving there at about 8:15. While they waited for their take-out orders, Steven had two or three sixteen ounce cans of beer which were paid for by Ronald. His last beer was consumed about forty minutes before the accident. They left the bar at about ten minutes of nine. When asked whether his uncle expressed concern about his ability to drive his car, Steven answered, "yes," and testified that his uncle had asked him if he would be "okay to drive to Worcester." Steven thought that at the time he left the bar he was "pretty well intoxicated."

We find it unnecessary to consider whether there was enough evidence for the jury to find that Ronald had sufficient control over his refrigerator to have "the obligation, or the means effectively to control the supply of beer that Steven could drink from that source." Compare *Cremins* v. *Clancy*, 415 Mass. at 294. This is so because there is no evidence that Ronald at that time knew or should have known that Steven was intoxicated during the period he had access to the refrigerator. Even if Ronald had heard the refrigerator door slam a number of times,[4] soft drinks were also kept there and his son was in the garage during part of the period Steven was there. Moreover, the number of beers taken from the garage, five to six, would not alone have put Ronald on notice that Steven was intoxicated. Compare *Kirby* v. *LeDisco, Inc.*, 34 Mass. App. Ct. 630, 632 (1993) (eight to twelve beers insufficient), with *O'Hanley* v. *Ninety-Nine, Inc.*, 12 Mass. App. Ct. 64, 69 (1981) (fifteen beers and six martinis), and *Cimino* v. *Milford Keg., Inc.*, 385 Mass. 323, 328 (1982) (six or more "White Russians"), cases in which the amount of alcohol consumed was held sufficient to put the server on notice that the customer was intoxicated.

The evidence as to the additional three beers that Steven drank at Pete & Henry's and which were paid for by Ronald,

---

[4]There was testimony that the refrigerator door had to be slammed shut otherwise it would not close.

however, raises a jury question whether Ronald knew or should have known that Steven was intoxicated at the time of his last drink. See *Hopping* v. *Whirlaway, Inc.,* 37 Mass. App. Ct. 121, 124 (1994). This is the relevant time. Evidence of subsequent intoxication has been held to have "no bearing" on the driver's apparent condition at the time he took his last drink. *McGuiggan,* 398 Mass. at 162. *Kirby* v. *LeDisco, Inc.,* 34 Mass. App. Ct. at 632.

Ronald had been drinking with Steven for more than an hour, he had drunk with Steven at the garage and also knew that before they drank together Steven had consumed some beer. He evidenced concern about Steven's driving and questioned him as to whether it was all right for him to drive.[5] This concern took place at approximately the time Steven had his last drink before the accident — forty minutes before the accident and just about when the three left Pete & Henry's — and at a time when Steven thought himself "pretty well intoxicated."

That Ronald bought the drinks at Pete & Henry's and did not serve Steven at his own house is not dispositive. "[N]ot every host entertains guests at home. Many entertain at hotels, clubs or resorts. Hosting at taverns is not uncommon." *Solberg* v. *Johnson,* 306 Or. 484, 490 (1988). By being at the bar drinking with his nephew and paying for the drinks and food, Ronald, the jury could find, made the beer available to Steven at a time when he knew or should have known Steven was intoxicated. *Id.* at 491. Compare *Mosko* v. *Raytheon Co.,* 416 Mass. 395, 403 (1993) (defendant did not furnish or pay for the alcohol consumed by its employees and there was no showing that the defendant had control over the alcohol). Since there was also evidence that Steven, because of his intoxication, negligently operated his car and caused the plaintiff's injury, Ronald was not entitled to a directed verdict or to judgment notwithstanding the verdict.

---

[5]Ronald testified that he controlled what went on in his garage and he would have thrown out anyone who did things of which he disapproved. Ronald also testified he would not have "let him drive to Worcester" if he had thought Steven was under the influence of alcohol.

2. *Liability of Pete & Henry's.* Although the evidence was sufficient to impose liability on Ronald, and although "generally" a commercial vendor has more experience in identifying intoxicated drinkers and may be better able to "shut off" consumption, see *McGuiggan,* 398 Mass. at 157, there was no evidence concerning Steven's behavior at the bar to put the establishment on notice that Steven was intoxicated. Compare *Cimino* v. *Milford Keg., Inc.,* 385 Mass. at 328. Accordingly, Pete & Henry's motion for judgment notwithstanding the verdict should have been allowed.

3. *Liability of the Commonwealth.* While the appeal in this case was pending, the Supreme Judicial Court decided *Carleton* v. *Framingham,* 418 Mass. 623, 629 & n.7 (1994), which holds that G. L. c. 258, § 10(*h*), provides governmental immunity against the kind of claim asserted by the plaintiff.[6] That case is dispositive of the plaintiff's claims against the Commonwealth.

In sum, we affirm the judgment against Ronald, but reverse the judgments against Pete & Henry's and the Commonwealth. Judgment is to enter in favor of those two defendants.

*So ordered.*

---

[6]That statute, as inserted by St. 1993, c. 495, § 57, provides immunity based on (with exceptions not here applicable) a "failure to provide adequate police protection, prevent the commission of crimes, investigate, detect or solve crimes, identify or apprehend criminals or suspects, arrest or detain suspects, or enforce any law." Its retroactive application, see St. 1993, c. 495, § 144, withstood constitutional challenge in *Carleton* v. *Framingham,* 418 Mass. 623, 634 (1994).