RICHARD PAUL DUBE *vs.* RON LANPHEAR & others.[1]

No. 06-P-713.

Essex. January 4, 2007. - June 21, 2007.

Present: LENK, COWIN, & GRAHAM, JJ.

*Negligence,* Social host, Serving alcoholic liquors to guest. *Alcoholic Liquors,* Liability of host.

In a civil action alleging that the defendants were negligent in permitting the individual whose vehicle struck and injured the plaintiff to continue to drink, knowing that he was intoxicated and intended to drive home, the judge properly granted summary judgment in favor of the defendants, where in the circumstances of the case, the defendants, by merely purchasing alcohol ordered by the individual at a commercial establishment, were not social hosts and had no duty of care to the plaintiff. [388-392]

CIVIL ACTION commenced in the Superior Court Department on May 5, 2001.

The case was heard by *Patrick J. Riley*, J., on motions for summary judgment.

*James J. O'Malley, III*, for the plaintiff.

*Ethan Warren* for John Carroll.

*Michael W. Reilly* for Robert P. Goodwin.

*James F. Murray* for Ron Lanphear.

COWIN, J. The plaintiff, Richard Paul Dube, sustained serious physical injuries when the motor vehicle that he was operating was struck by a vehicle driven by Ravindra Bhoge in the wrong direction on the southbound portion of Route 95 in Wakefield. Bhoge had, earlier that evening, consumed a number of alcoholic drinks at a bar in the company of three friends. The plaintiff subsequently commenced an action against Bhoge's three companions, alleging that they were social hosts and that, knowing that Bhoge was intoxicated and intended to drive home, they

---

[1]Robert P. Goodwin and John Carroll.

negligently permitted him to continue to drink and were consequently liable for the damages that he caused.[2] A judge of the Superior Court concluded that in the circumstances of the case the defendants, Ron Lanphear, Robert Goodwin, and John Carroll, had no duty of care and allowed their motions for summary judgment. The plaintiff filed a timely notice of appeal from the final judgment dismissing his complaint. We affirm.

1. *Facts.* Construing the summary judgment record in a light most favorable to the plaintiff, see *Coveney* v. *President & Trustees of the College of the Holy Cross*, 388 Mass. 16, 17 (1983), the following facts emerge. For about one and one-half years prior to the night in question, Bhoge and the three defendants met regularly on Fridays after work for drinks at nearby bars or taverns. Over a period of time, the group developed an informal system of rotating payments, with each person taking turns paying the bill for that night. When this did not take place, the bill would be divided equally, irrespective of the amount that each person had ordered. On the evening of February 9, 2001, with Lanphear scheduled to pay, the group met at Big Dog Sports Grill in Lynnfield. Bhoge and Goodwin arrived at 5:15 P.M., Lanphear about fifteen minutes later, and Carroll about forty-five minutes after Lanphear. Each man ordered his own drinks. At about 7:00 P.M., the men ordered and shared four appetizers.

At approximately 9:30 P.M., Lanphear paid the bill that had accumulated to that point. The bill included four or five hand-poured rum and coke drinks served in fifteen-ounce glasses that had been ordered and consumed by Bhoge.[3] After Lanphear paid, Bhoge and Goodwin each ordered and drank another rum and coke as well as a larger than normal shot of Crown Royal

---

[2]Also named as defendants in the plaintiff's complaint were Canine Entertainment Corporation (doing business as Big Dog Sports Grill), the operator of the bar at which Bhoge and his companions had been drinking; and certain of that company's employees. (The plaintiff sued Bhoge in a separate action, which resulted in a settlement.) On the plaintiff's motion, the claims against the corporation and its employees were dismissed. Accordingly, the present appeal relates only to the plaintiff's claims against Lanphear, Goodwin, and Carroll.

[3]The bill also included six to eight beers consumed by Goodwin; five beers drunk by Lanphear; six or seven beers consumed by Carroll; and the appetizers.

whiskey.[4] Around 9:45 P.M., Bhoge headed toward the exit, leaving his coat behind despite the particularly cold weather. Lanphear asked where he was going, to which Bhoge replied by gesturing toward his cellular telephone, apparently indicating that he was going outside to make or receive a call. When he failed to return after some time, Goodwin looked outside and observed Bhoge's car still in the parking lot. The defendants therefore assumed that he was still using his cellular telephone.

At about 10:30 P.M., forty-five minutes after Bhoge left the bar, the defendants departed. Lanphear and Carroll left first, observed Bhoge seated in the driver's seat of his vehicle, but allegedly did not notice anything unusual in his demeanor or his response after they waved to him. Goodwin then came out carrying Bhoge's coat, opened the passenger door of Bhoge's vehicle to give the coat to him, asked if he was okay, and received an affirmative response. Goodwin allegedly observed nothing that indicated that Bhoge was impaired,[5] and left with Bhoge remaining in his car. The judge inferred, favorably to the plaintiff, that, given Bhoge's height and weight, the amount of alcohol he consumed during the period, and Bhoge's own statements that he is not a drinker by nature and can feel the effects after one drink, his intoxication would have been apparent. Bhoge drove from the parking lot and, after about four miles, collided head-on with the plaintiff's vehicle.[6]

2. *Discussion.* The case requires consideration of the concept of "social host liability." See *McGuiggan* v. *New England Tel. & Tel. Co.*, 398 Mass. 152, 162 (1986). The plaintiff does not disagree in substance with how such liability is defined, but rather with how the motion judge applied the principles to the present record. Thus, he argues that liability should be imposed

---

[4]The record is clear that neither Lanphear nor Carroll paid for these additional drinks. The judge correctly declined to draw the inference that Goodwin paid for them. There is no basis in the record for determining whether Bhoge or Goodwin paid for both, or whether each paid separately.

[5]Goodwin's testimony to this effect was compromised by his own admission that he probably was not the best judge of whether he, himself, was too intoxicated to drive at that time.

[6]Bhoge pleaded guilty to criminal charges arising from the accident, including operating a motor vehicle while under the influence of intoxicating liquor, and served six months in jail.

on Bhoge's defendant-companions in these circumstances, and that we may do so without a change in existing law.

The doctrine recognizes "liability to a person injured by an intoxicated guest's negligent operation of a motor vehicle where a social host who knew or should have known that his guest was drunk, nevertheless gave him or permitted him to take an alcoholic drink and thereafter, because of his intoxication, the guest negligently operated a motor vehicle causing the third person's injury." *Ibid.* The plaintiff must show that the social host knew, or reasonably should have known, that the intoxicated guest might presently operate a motor vehicle. *Ibid.* There is a judicially created duty that "a social host or other noncommercial provider of alcoholic beverages owes to the general public . . . to refuse to furnish such beverages to an obviously intoxicated person if, in the circumstances, such person thereby constitutes a reasonably foreseeable danger or risk of injury to third persons." *Manning* v. *Nobile,* 411 Mass. 382, 391 (1991), quoting from *McGuiggan, supra* at 159.

Recognizing that the imposition of liability in such situations can have a considerable effect "on a multitude of personal relationships in a variety of social settings," *McGuiggan, supra* at 160, the Supreme Judicial Court has limited application of the principle to circumstances in which the host possesses actual control over the liquor supply. See *Ulwick* v. *DeChristopher,* 411 Mass. 401, 406 (1991) (no liability where defendant provided premises to drink, but intoxicated guest consumed his own alcohol); *Cremins* v. *Clancy,* 415 Mass. 289, 293-294 (1993) (no control of liquor supply where alcohol jointly owned by defendant and intoxicated driver); *Mosko* v. *Raytheon Co.,* 416 Mass. 395, 403 (1993) (corporate defendant which neither purchased nor furnished alcohol not liable). The relevant inquiry is "who had the authority to deny further service of alcohol when intoxication became apparent." *Ulwick,* 411 Mass. at 406, quoting from *Dickinson* v. *Edwards,* 105 Wash. 2d 457, 466 (1986).

Relying on *Makynen* v. *Mustakangas,* 39 Mass. App. Ct. 309, 311-313 (1995), the plaintiff argues that Lanphear was a social host because he entertained the others by paying for the drinks,

and alternatively that the foursome was essentially a "drinking club" in which each effectively hosted the others. Characterizing each of the three defendants as a "host," he relies further on the inference, also drawn by the motion judge, that the defendants knew that Bhoge was intoxicated at the time. See *id.* at 313. The motion judge concluded that the defendants could not be deemed social hosts, however, because they did not regulate the liquor supply. While they could refuse to continue to pay for Bhoge's drinks, they could not require that he be "shut off" by the bar; relinquish his drinks; or be ejected from the premises. In the judge's view, those powers were vested exclusively in the liquor licensee. Given that the defendants did not control Bhoge's ability to continue to drink at the premises, they could not be deemed his hosts, and they owed the plaintiff no duty irrespective of any awareness that they may have had that Bhoge was becoming increasingly intoxicated.

The judge's analysis was correct. The logical result of the plaintiff's argument here is that one who merely purchases alcohol ordered by another at a commercial establishment automatically acquires a social host's duty of care should he be on notice that the drinker is intoxicated. This sweeps too broadly, and was not this court's purpose in deciding *Makynen.* "Cases of this character must be decided one by one, applying common law principles." *McGuiggan,* 398 Mass. at 161. Whether a duty of care exists "is a question of law . . . to be determined by reference to existing social values and customs and appropriate social policy." *Cremins,* 415 Mass. at 292.

On this record, we have little difficulty in concluding that none of the participants "hosted" the others in any meaningful sense. Sharing a check is not the equivalent of being a host. That the sharing in this instance took the form of rotating payment of the entire bill, rather than equal division of the bill on each occasion, is a distinction that is meaningless. Applying "existing social values and customs," *ibid.,* it cannot reasonably be argued that the common practice of patronizing eating and drinking establishments with companions, each participant paying a fair share of the charges, imposes social host liability on each member of the

group in the event one individual visibly drinks to excess and causes damage afterward.[7]

These realities are reflected in the requirement that a defendant be in control of the liquor supply before there can be social host liability. No such control was present in this case. A true host in a practical sense owns or provides the liquor served to guests, and consequently is in a position to cut off that supply in the event that he observes that a guest is becoming intoxicated. Failure to do so subjects such a host to liability for foreseeable damages related to the guest's drinking. Here, no evidence suggests that the defendants could have interrupted the liquor supply to Bhoge merely by announcing that they would not continue to pay for it. Indeed, we need look no further than the fact that Bhoge continued to drink with Goodwin after Lanphear had paid the bill.

*Makynen* is not to the contrary. There, an uncle allowed his twenty-four year old nephew, who lived with the uncle off and on, to consume several beers over the course of two hours from a refrigerator located in the garage of the uncle's home. *Makynen*, 39 Mass. App. Ct. at 311-312. Subsequently, the two visited a bar where the uncle purchased two or three more beers for his nephew. *Id.* at 312. At the time the last beer purchase was made, the uncle expressed concern regarding his nephew's ability to drive home. *Ibid.* The nephew later conceded that he was "pretty well intoxicated" at the time he left the bar. *Ibid.* Forty minutes after consuming his final beer, the nephew drove into oncoming traffic and collided with the plaintiff's vehicle head-on. *Id.* at 310, 312. A jury subsequently found the uncle liable to the plaintiff on a social host theory, and we affirmed. *Id.* at 311.

Characterizing the question as "close," *ibid.*, we concluded that the evidence that the uncle purchased the beer at the bar for his nephew supported a finding that he had sufficient control of the process of supplying liquor to his guest that social host li-

---

[7]We assume that the plaintiff would not argue that social host liability was established if such a group carefully parsed the check and each member paid only the precise charges for what he had ordered. That the group prefers the rough justice of simply dividing the check equally would not appear to alter the analysis.

ability could logically be imposed. *Id.* at 313 ("By being at the bar drinking with his nephew and paying for the drinks and food, [the defendant], the jury could find, made the beer available to [his nephew] at a time when he knew or should have known [his nephew] was intoxicated"). The analysis depends on the relationship between the uncle and the nephew, including the fact that the nephew did not share in the payment, permitting the jury to find that the uncle could have cut off the liquor flow had he chosen to do so. For the reasons stated, the defendants in the present case lacked that power to control. Whatever the dictates of friendship or however their obligations might appear from the viewpoints of common sense and good judgment, the defendants were subject to no legally imposed duty of care to the plaintiff in the circumstances.

*Judgment affirmed.*